UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | No. 3:08-CR-7 |
| | ) | (Varlan / Shirley) |
| MARCUS D. JARNIGAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the undersigned for disposition of the government's Motion for Reconsideration of Report and Recommendation and Memorandum in Support [Docs. 37 and 42], filed June 19, 2008. Defendant Jarnigan filed a Memorandum in Opposition [Doc. 43] on July 2, 2008. Accordingly, this matter is ripe for adjudication and the pending motion is addressed herein, a hearing being unnecessary for its disposition.

**I.    Procedural Posture**

On June 11, 2008, the undersigned entered a Report and Recommendation [Doc. 36] denying Defendant Jarnigan's Motion to Suppress Evidence [Doc. 15]. The thirty-nine page Report and Recommendation resulted from two evidentiary hearings on this matter. On April 16, 2008, the Court held its initial evidentiary hearing in which the government offered testimony from Officer James Lockmiller of the Knoxville Police Department and the defense offered testimony from Ronnie Davis, a resident of Knox County. Officer Lockmiller and Mr. Davis testified about the

events in question on December 31, 2007, the night Defendant Jarnigan was arrested by the KPD. After the conclusion of the hearing, the government filed a motion requesting to re-open the suppression hearing, "for the limited purpose of allowing two additional KPD officers to testify on the issue of the 911 complainant identifying the vandalism suspect" [Doc. 23 at 1]. The Court granted the government's request [Doc. 30], and thus, a subsequent evidentiary hearing was held on May 15, 2008. The government called two witnesses, Officer John Stevens and Officer Caleb Crothers, both officers with the KPD. Defendant did not call any witnesses. As stated above, the Report and Recommendation currently at issue was entered on June 11, 2008. Although the government ultimately prevailed on Defendant's motion to suppress since the undersigned recommended denying Defendant's motion, the government, nevertheless, filed the pending Motion for Reconsideration, asking the Court to reconsider certain factual and credibility findings made in the June 11 Report and Recommendation.

**II.     Analysis**

The Federal Rules of Criminal Procedure make no provision for a motion to reconsider. Courts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgement pursuant to Fed.R.Civ.P. 59(e). See United States v. Titterington, 2003 WL 23924932 at *1 (W.D. Tenn. May 22, 2003). A motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e) may be made for one of three reasons:

    1) An intervening change of controlling law;

    2) Evidence not previously available has become available; or

3) It is necessary to correct a clear error of law or prevent manifest injustice.

Fed.R.Civ.P. 59(e); Helton v. ACS Group, 964 F.Supp. 1175, 1182 (E.D. Tenn. 1997). Rule 59(e) is not intended to be used to "relitigate issues previously considered" or to "submit evidence which in the exercise of reasonable diligence, could have been submitted before." Id. at 1182. When a movant offers "essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal." Id. (citing Keweenaw Bay Indian Community v. State of Michigan, 152 F.R.D. 562, 563 (W.D.Mich. 1992), aff'd 11 F.3d 1341 (6th Cir. 1993)). Thus, there are limited circumstances in which a court may grant a motion for reconsideration. In fact, the Supreme Court stated that Congress' intent in adopting Fed.R.Civ.P. 59(e) "had a clear and narrow aim." White v. N.H. Dept. of Employment Sec., 455 U.S. 445, 450 (1982). The aim was to empower district courts "to rectify [their] own mistakes in the period immediately following the entry of judgment." Id.

The government, in asking this Court to reconsider its Report and Recommendation, does not allege that the June 11 Report and Recommendation is invalid because a change in controlling law has occurred or evidence not previously available has become available for the Court's review. Instead, the government states that the Report and Recommendation "contains findings of fact and language ... which are of concern to the United States" [Doc. 42 at 1]. This proffered "reason" is insufficient as a basis for reconsideration. Only if this Court assumed, that such "reason" constituted a contention that reconsideration is "necessary to correct a clear error of law or prevent manifest injustice" would there even be a basis for reconsideration. Fed.R.Civ.P. 59(e). However, even assuming such contention was made, the Court does not find it to be well taken.

The government requests this Court "modify the language in the Findings of Fact and Credibility Analysis contained in the Report and Recommendation" [Doc. 42 at 1]. Specifically, the

3

government takes issue with the following language:

> In regard to Mr. Davis's and Officer Lockmiller's testimony, this Court finds it is unable to accept either testimony as preponderating over the other. Neither sufficiently impeached, but neither testimony, on this issue was corroborated either. ... As to Officer Lockmiller's testimony, the Court finds it is inconsistent with the testimony given by Officers Stevens and Crothers, which established that Ms. Matthews, not Mr. Davis, identified Defendant as the vandalism suspect. Accordingly, the Court finds the testimony given by Officers Stevens and Crothers credible, was corroborated by each other's testimony as well as the other evidence in the record, and not impeached by other evidence in the record.

[Doc. 36 at 28-29]. The government believes this language "could be interpreted as impugning Officer Lockmiller's integrity and credibility" [Doc. 42 at 3] (emphasis supplied). As a preliminary matter, the Court notes the government failed to provide any proposed modifications, instead, asking the Court to now find Officer Lockmiller credible, and as a result, find Mr. Davis incredible. For the reasons outlined below, the Court is unable to grant the government's request.

Since the government's motion asks the Court to revisit its findings of facts and credibility finding, no clear error of law is being advanced. Thus, in order for its motion for reconsideration to succeed, the government must show to the Court that failure to reconsider its credibility finding would result in manifest injustice. As applied to Rule 59(e), no general definition of manifest injustice has ever been developed; courts instead are directed to look at the matter on a case-by-case basis. McDaniel v. American General Financial Services, 2007 WL 2084277, *2 (W.D. Tenn. July 17, 2007) (citing Torre v. Federated Mutual Ins. Co., 906 F.Supp. 616, 619 (D. Kan. 1995) (unsubstantiated assertion could not lead to a finding of manifest injustice); Attorney Registration & Disciplinary Com. of Supreme Court v. Betts, 157 B.R. 631 (Bankr. N.D. Ill. 1993) (mere disagreement with court's findings does not rise to level of manifest injustice)). "What is clear from

4

the case law, and from a natural reading of the term itself, is that a showing of manifest injustice requires that there exist a <u>fundamental flaw</u> in the court's decision that without correction would lead to a result that is <u>both inequitable and not in line with applicable policy</u>." <u>Id.</u> (emphasis supplied) As found in <u>Black's Law Dictionary</u>, a "manifest injustice" is defined as "[a]n error in the trial court that is <u>direct, obvious, and observable</u>, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." (7th ed. 1999) (emphasis supplied). The government has not met any of these criteria in seeking reconsideration.

The Court reiterates that it did not make a credibility finding as to Officer Lockmiller's testimony, thus, it follows, the undersigned could not have made a finding which impugned Officer Lockmiller's credibility. In other words, the Court could not have made an "obvious error" nor is there "a fundamental flaw" in its credibility finding since it made no finding. Instead, the Court found that "it [was] unable to accept either [Officer Lockmiller's or Mr. Davis's] testimony as preponderating over the other. Neither sufficiently impeached, but neither testimony, on this issue, was corroborated either", and since the subsequent testimony given by Officers Stevens and Crothers was "credible, ... corroborated by each other's testimony as well as the other evidence in the record, [including the two 911 calls and the two police cruiser recordings], and not impeached by other evidence in the record", the Court found Ms. Matthews's identification of Defendant provided probable cause to arrest the Defendant for vandalism [Doc. 36 at 28-31]. The Report and Recommendation noted specifically that the undersigned relied on the testimony of the other two officers, the two 911 calls placed by Ms. Matthews, and its own review of the video recordings from the two police cruisers in determining who made the identification of the Defendant to the police.

5

Furthermore, with regard to any issue or interpretation regarding the integrity or credibility of Officer Lockmiller, it is important to note how and why the issue arose. First, based on Officer Lockmiller's and Mr. Davis's testimony and the findings at the evidentiary hearing, the record reflects that there were five people in the front yard of 1801 Lombard on December 31, 2007 when the Defendant was identified as the vandalism suspect: three police officers, Officers Lockmiller, Stevens, and Crothers; Mr. Davis; and Ms. Matthews. At the initial hearing, only one of the persons there, Officer Lockmiller, testified that Mr. Davis pointed in the direction of the Defendant and identified him as the vandalism suspect. At the same hearing, Mr. Davis denied he identified the Defendant. The Court never personally heard from Ms. Matthews as to whether she identified the Defendant to the police. Neither the government nor the defense called her as a witness. The two other law enforcement witnesses, Officers Stevens and Crothers, were not called as witnesses. Yet, in closing argument during the first evidentiary hearing, the Court and AUSA Lewen engaged in the following colloquy:

> Mr. Lewen: Three officers heard [Mr. Davis] say that is the guy. When Lockmiller turned around –
>
> The Court: How do I know that?
>
> Mr. Lewen: Officer Lockmiller came in here and told you.
>
> The Court: All three heard it? I didn't hear anybody else say it except Lockmiller.
>
> Mr. Lewen: Your Honor, Lockmiller can testify as to what those other officers heard and said. He spoke with those other officers. That is what those other officers told him.

[Doc. 31 at 121].

Thus, it appeared to the Court that AUSA Lewen was clearly indicating it was not just Officer

6

Lockmiller who heard/saw Mr. Davis identify the Defendant, but the two other officers as well. However, when this Court granted the government's request to reopen the suppression hearing for the purposes of corroborating Officer Lockmiller's testimony as to Mr. Davis's identification, "given that the Court specifically mentioned that only one of the three officers testified," [Doc. 23 at 2], it turned out that the testimony provided by Officers Stevens and Crothers did not corroborate Officer Lockmiller's testimony as to Mr. Davis's identification, but rather corroborated each other's statements regarding the events in question. Specifically, the subsequent testimony established that it was Ms. Matthews, not Mr. Davis, who identified the Defendant as the man who pulled a gun on her husband and who came over to 1801 Lombard and vandalized the house, and as such, did not corroborate Officer Lockmiller's statement that it was Mr. Davis who identified the Defendant in the front yard of 1801 Lombard. Thus, the subsequent testimony provided by the KPD officers who were at the scene with Officer Lockmiller, and its lack of corroboration with Officer Lockmiller's testimony from the initial hearing, particularly in light of the argument from the government that their testimony would corroborate it, and that issue being before the Court, actually served to raise, rather than diminish any questions the Court might have had about Officer Lockmiller's testimony.

### III. Conclusion

Accordingly, the Court has reviewed the government's Motion for Reconsideration of Report and Recommendation and finds no reason based in law to reconsider its factual and credibility findings (or in actuality, the lack of any findings) as to Officer Lockmiller's testimony. Therefore, the government's motion **[Doc. 37]** is hereby **DENIED**. The undersigned has been advised that upon the entering of this Order, the District Court will enter an Order, setting deadlines for the

7

parties to file objections to this Court's original Report and Recommendation as filed on June 11, 2008. At that time, the District Court will also set a new trial date since the July 15, 2008 trial date was cancelled due to the pending motion.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge