UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CR-7 |
| | ) | (VARLAN/SHIRLEY) |
| MARCUS D. JARNIGAN, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

The defendant, Marcus D. Jarnigan ("Defendant Jarnigan"), is charged with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1). [*See* Doc. 1.] Defendant Jarnigan filed a motion to suppress all evidence obtained subsequent to his detention on December 31, 2007, on the basis that his detention was without reasonable suspicion or probable cause in violation of the Fourth Amendment. [Doc. 15.]

Following an initial evidentiary hearing on the motion to suppress on April 16, 2008, Magistrate Judge C. Clifford Shirley ("Magistrate Judge Shirley") granted the Government's request to re-open the suppression hearing on April 24, 2008. [*See* Docs. 21, 23, 28, 30.] After completing the hearing on the motion to suppress on May 15, 2008, Magistrate Judge Shirley filed a report and recommendation ("R&R") [Doc. 36], in which he recommended that the motion to suppress be denied. The Government filed a motion for reconsideration of the R & R [Doc. 37], which Magistrate Judge Shirley denied on July 25, 2008. [Doc. 44.]

After the Court granted Defendant Jarnigan two extensions to file objections to the report and recommendation [*see* Docs. 45, 47], no timely objections were made by Defendant Jarnigan's counsel. The Court then adopted Magistrate Judge Shirley's Report and Recommendation ("R & R") on September 5, 2008. [Doc. 49.] On December 1, 2008, Defendant Jarnigan filed his Motion for Leave to File Objection to Magistrate's Report and Recommendation Out of Time. [Doc. 64.] After considering Defendant Jarnigan's motion, the Court granted his request to the extent the he was given permission to file a motion for reconsideration of the Court's order adopting Magistrate Judge Shirley's R & R. [Doc. 67.] On December 5, 2008, Defendant Jarnigan filed the present pending Motion for Reconsideration of Order Adopting Magistrate's Report and Recommendation [Doc. 71], which the Government has responded to in opposition. [Doc. 74.] Thus, this matter is now ripe for the Court's consideration. Due to the record before it, the Court finds it unnecessary to hold a hearing on this matter and denies Defendant Jarnigan's request for such a hearing. For the reasons set forth herein, the Court will also deny Defendant Jarnigan's reconsideration motion.

## I.    STANDARD OF REVIEW

The Court notes the relatively unique procedural posture of this case because Defendant Jarnigan has essentially raised untimely objections to Magistrate Judge Shirley's already adopted R & R. At least one district court has considered a motion for reconsideration after ruling on a defendant's motion to suppress. *United States v. Pruitt*, 458 F.3d 477, 480 (6th Cir. 2006). In *Pruitt*, the district court first considered whether the matter was worthy of consideration before addressing the merits of the underlying suppression

2

motion. *Id.* Thus, the Court will first address whether Defendant Jarnigan has presented a sufficient basis for his reconsideration motion before reaching the merits of Defendant Jarnigan's objections.

The Federal Rules of Criminal Procedure make no provision for a motion to reconsider, and courts adjudicating such motions in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). *See, e.g.*, *United States v. Titterington*, No. CR. 2-20165, 2003 WL 23924932 at *1 (W.D. Tenn. May 22, 2003); *United States v. Sims*, 252 F. Supp. 2d 1255, 1260-61 (D.N.M. 2003); *United States v. Thompson*, 125 F. Supp. 2d 1297, 1300 (D. Kan.2000). Such motions may be made for one of three reasons: (1) An intervening change of controlling law; (2) Evidence not previously available has become available; or (3) It is necessary to correct a clear error of law or prevent manifest injustice. Fed. R. Civ. P. 59(e); *Helton v. ACS Group*, 964 F. Supp. 1175, 1182 (E.D. Tenn.1997). Thus, there are limited circumstances in which a court may grant a motion for reconsideration. In making such a determination, the Court carefully considers the motion for reconsideration and the Government's response [Docs. 71, 74], Magistrate Judge Shirley's R&R [Doc. 36], the underlying briefs [Docs. 15, 16, 20], the transcript of proceedings before Magistrate Judge Shirley [Docs. 31, 41], and exhibits presented. [*See* Docs. 25, 35.]

## II.  ANALYSIS

In his motion for reconsideration, Defendant contends that Magistrate Judge Shirley erred by giving credence to the testimony of Knoxville Police Department ("KPD") officers

3

about the identification of the Defendant by a complainant, Jamie Matthews ("Ms. Matthews"). Thus, Defendant does not contend that there was an intervening change in controlling law or that new evidence has become available. Furthermore, his motion for reconsideration cannot be based upon an alleged need to correct a clear error of law since credibility assessments are findings of fact. *See United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). Thus, Defendant is apparently basing his motion on the alleged need to prevent a manifest injustice.

"Manifest injustice" has been defined as "[a]n error in the trial court that is direct, obvious, and observable." *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004) (alteration in original) (quoting *Black's Law Dictionary* 974 (7th ed. 1999)). In other words, "a showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *McDaniel v. Am. Gen. Fin. Servs., Inc.*, No. 04-2667 B, 2007 WL 2084277, at *2 (W. D. Tenn. July 17, 2007) (quoting *In re Bunting Bearings Corp.*, 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004)).

In light of this understanding, the Court proceeds to determine whether the credibility determination by Magistrate Judge Shirley constitutes a manifest injustice. In his motion, Defendant cites to the following evidence as supporting his position: (1) though not determinative, the contradiction between the testimony of KPD Officer James Lockmiller ("Officer Lockmiller") and Ronnie Davis ("Mr. Davis"), one of the complainants; (2) indication from Ms. Matthews's 911 call that she did not see the perpetrator of the vandalism

4

to her home; (3) Ms. Matthews's description of someone named "Bulldog" in her 911 call; (4) Ms. Matthews's description of the suspect being about 19 years old even though Defendant was 33 years old; (5) inconsistent testimony by Officer John Stevens ("Officer Stevens") about Ms. Matthews's identification of the Defendant by his clothing; (6) a DVD recording of Ms. Matthews saying "I don't know who done it"; and (7) Officer Stevens's failure to include Ms. Matthews's identification of Defendant in his initial report on the vandalism incident.

However, there is other evidence in the record that supports Magistrate Judge Shirley's finding the KPD officers credible about the identification of Defendant by Ms. Matthews. At the suppression hearing, Officer Stevens testified:

> Ms. Matthews directed our attention, directed my attention towards her. She leaned into me, spoke the words as "that's him." Officer Crothers said "which one?" She kind of leans in, directs her back towards the defendant and she motions, she says, "the one in the jacket coming down the stairs."

[Doc. 41 at 7.] Consistent with Officer Stevens's testimony, Officer Crothers testified, "I said, which one? She said the one wearing the white jacket going down the stairs." [Doc. 41 at 23.] The testimony of Officer Stevens and Officer Crothers is supported by the audio of an interaction between the officers and Ms. Matthews, as captured on the DVD from Officer Stevens's in-car camera. [Doc. 25, Exhibit 6.] Though portions of the interaction are inaudible, consistent with the officers' testimony, Officer Crothers is heard saying "which one," to which Ms. Matthews can be heard responding "right there" and "coming down the stairs." [*Id.* at 22:42:11-22:42:18.] The officers' testimony regarding Ms. Matthews's

5

identification of Defendant Jarnigan is further supported by her subsequent call to the police verifying that "the one with the white jacket that they did take around the house, that is the one that pulled the gun out on my husband earlier." [Doc. 25, Exhibit 1.] Thus, the accounts by Officers Stevens and Crothers are supported by the DVD recording and Ms. Matthews's subsequent verification of this identification during a call to the police after Defendant Jarnigan's arrest. Though Defendant Jarnigan raises questions about the veracity of Officer Stevens's supplement to the initial crime report for the vandalism incident, the DVD recording of the interaction between the officers and Ms. Matthews supports the account in the supplemental report. [Doc. 25, Exhibits 6, 7, 8.]

To the extent it is contended that Ms. Matthews would be unable to identify Defendant Jarnigan as the vandalism suspect since she did not look out the window during the vandalism attack or identified a different person as the perpetrator, the Court notes that Ms. Matthews told the police that just 30 minutes prior to her interaction with Officers Stevens and Crothers someone pulled a gun on her husband, so she brought her husband in the house and the person with the gun left. [Doc. 25, Exhibit 6 at 22:41:33-52.] Shortly thereafter, the vandalism attack occurred. [*Id.*] In her 911 call, Ms. Matthews stated that the person perpetrating the vandalism was the person who "jumped my husband a minute ago." [Doc. 25, Exhibit 1.] Thus, there is evidence that Ms. Matthews would be able to identify the perpetrator of the vandalism based upon her witnessing the incident of the person pulling the gun on her husband just a few minutes before. Her ability to identify the individual is further supported by her subsequent verification over the telephone to the police "the one with the

6

white jacket that they did take around the house, that is the one that pulled the gun out on my husband earlier" and, thus, the alleged perpetrator of the vandalism attack. [Doc. 25, Exhibit 1.]

In his motion, Defendant Jarnigan attempts to question Ms. Matthews's ability to identify him given other statements captured on the 911 tape and the DVD from Officer Stevens's in-car camera. While Defendant Jarnigan contends that Ms. Matthews identified someone named "Bulldog" as the vandalism perpetrator, the DVD from Officer Stevens's in-car camera captures Ms. Matthews stating "somebody came to the door and said they was bulldog." [Doc. 25, Exhibit 6 at 22:41:59.] This statement suggests that the "bulldog" statement on the earlier 911 tape was Ms. Matthews repeating what the vandalism perpetrator said, not necessarily that she was naming an individual she knew as "Bulldog" as the perpetrator. To the extent he questions why Ms. Matthews would identify Defendant Jarnigan who was 33 years old at the time when she previously indicated the perpetrator as being 19 to 20 years old, the Court notes that this argument is countered by Ms. Matthews's identification of Defendant Jarnigan to officers as evidenced on the DVD. [Doc. 25, Exhibit 6, at 22:42:11-22:42:18.] Furthermore, though Defendant Jarnigan contends Ms. Matthews says "I don't know who done it" on the DVD, the voice sounds more consistent with that of Mr. Davis rather than Ms. Matthews. [Doc. 25, Exhibit 6 at 22:42:23-32.] Even if Ms. Matthews had made this statement, the seeming contradiction can be explained by her reluctance to identify Defendant Jarnigan publicly due to her safety concerns as evidenced

7

by her comments during a call to the police after Defendant Jarnigan's arrest. [Doc. 25, Exhibit 1.]

Defendant Jarnigan also relies on the alleged inconsistent testimony by Officer Stevens regarding the identification of Defendant by his clothing. He contends that it was inconsistent for him to testify that Ms. Matthews identified Defendant Jarnigan as "in the jacket coming down the stairs" when he later testified that he and Officer Crothers had not asked what the suspect was wearing. [*See* Doc. 41 at 14, 17.] The Court is unpersuaded by this argument. During the hearing, Officer Stevens was asked whether he had *asked* Ms. Matthews what the suspect was wearing. His prior testimony made no indication that Ms. Matthews made the statement "in the jacket coming down the stairs" in response to a question by either Officer Stevens or Officer Crothers. Rather, he testified that Ms. Matthews identified Defendant Jarnigan by describing him as "in the jacket coming down the stairs." Accordingly, Officer Stevens did not testify inconsistently when stating that he did not ask Ms. Matthews what the suspect was wearing. Additionally, Officer Stevens's testimony is consistent with the DVD recording from his in-car camera. [Doc. 25, Exhibit 6 at 22:42:16.]

To the extent Defendant Jarnigan questions the veracity of Officer Lockmiller's testimony, Magistrate Judge Shirley made no credibility determinations as to this officer. Thus, as Defendant Jarnigan concedes in his motion, Officer Lockmiller's testimony was not determinative in this matter. In any case, this argument is unpersuasive in light of all the

8

other evidence already discussed that gives credence to the testimony of Officers Stevens and Crothers.

Thus, despite arguments to the contrary, there is ample and persuasive evidence to support Magistrate Judge Shirley's credibility determinations as to Officers Stevens and Crothers' testimony about the identification of Defendant Jarnigan by Ms. Matthews. Notably, a mere disagreement with the court's findings does not rise to the level of manifest injustice. *McDaniel*, 2007 WL 2084277, at *2 (quoting *In re Bunting Bearings Corp.*, 321 B.R. at 423). Because Defendant Jarnigan has failed to sufficiently establish the need to prevent manifest injustice nor any other valid basis for his reconsideration motion, the Court will deny his Motion for Reconsideration of Order Adopting Magistrate's Report and Recommendation. [Doc. 71.]

The Court notes that even if Defendant Jarnigan's motion for reconsideration were granted and the Court performed a *de novo* review the portions of the R & R to which he has objected as would be required by 28 U.S.C. § 636(b)(1), the ultimate outcome would be no different.

Defendant Jarnigan has raised objections as to the credibility assessment of Officers Stevens and Crothers' testimony regarding the identification of Defendant Jarnigan by Ms. Matthews. Though Defendant Jarnigan has presented some evidence in support of his position, the Court is more persuaded by evidence supporting the credibility of the officers' testimony for the reasons more fully discussed above in relation to the motion for reconsideration. In particular, the accounts by Officers Stevens and Crothers are consistent

9

with each other, with the DVD from Officer Stevens's in-car camera, with the supplemental crime report, and with the calls to the police made by Ms. Matthews both before and after the chase and arrest of Defendant Jarnigan. The Court finds such consistency of evidence strongly indicative of the credibility of the officers' testimony. Furthermore, Defendant Jarnigan's contention that Ms. Matthews was incapable of identifying him unpersuasive given the DVD recording and 911 tapes evidencing the basis for her identification due to her witnessing earlier events and her subtle identification of him to Officers Stevens and Crothers. Moreover, the Court finds Defendant Jarnigan's remaining arguments as to the ability of Ms. Matthews to identify Defendant Jarnigan, the alleged inconsistent testimony by Officer Stevens, and the supplemental crime report unpersuasive for the same reasons already discussed above in relation to the reconsideration motion. In light of this evidence, even under a *de novo* review of Defendant Jarnigan's objections, the Court would make the same credibility finding regarding Officers Stevens and Crothers' testimony as Magistrate Judge Shirley.

## III. CONCLUSION

For the reasons set forth herein, Defendant Marcus D. Jarnigan's Motion for Reconsideration of Order Adopting Magistrate's Report and Recommendation [Doc. 71] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE